**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **NATALIE PLUMMER AND RYAN MCCONNELL ,** | § § § | |
| **Plaintiffs,** | § § | |
| **vs.** | § § | **Civil Action No. 4:14-CV-2959** |
| **UNIVERSITY OF HOUSTON, RICHARD BAKER, AND RICHARD WALKER,** | § § § § | |
| **Defendants.** | § § § | |

**O R D E R**

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (**Instrument No. 17**) and Motion for Summary Judgment (**Instrument No. 51**).

**I.**

**A.**

Plaintiffs Natalie Plummer ("Plummer") and Ryan McConnell ("McConnell") (collectively, "Plaintiffs") filed a Complaint against Defendants University of Houston ("UH"), UH Vice Chancellor and Vice President of the UH Office of Equal Opportunity Services, Richard Baker ("Baker"), individually and in his official capacity, and UH Vice President and Vice Chancellor for Student Affairs and Enrolment Services, Richard Walker ("Walker"), individually and in his official capacity, (collectively, "Defendants") on October 17, 2014 in the United States District Court for the Southern District of Texas. (Instrument No. 1). Plaintiffs

filed a First Amended Complaint on October 17, 2014 (Instrument No. 6), and filed a Second Amended Complaint on October 17, 2014 (Instrument No. 7).

Plaintiffs filed suit alleging that Defendants violated both Plaintiffs' constitutional due process rights under 42 U.S.C.A. §1983 (West), and Plaintiffs' rights under Title IX of the Educational Amendments of 1972, 86 Stat. 373, as amended, 20 U.S.C.A. § 1681 (West) ("Title IX"). (Instrument No. 7). Plaintiffs seek this Court's declaratory judgment that the UH Sexual Misconduct Policy violates the Due Process Clause of the U.S. Constitution and Title IX, compensatory damages, court costs, and attorney's fees under 42 U.S.C.A. § 1983, and injunctive relief restoring Plaintiffs as UH students and prohibiting any further disciplinary proceedings under the UH Sexual Misconduct Policy. (Instrument No. 7).

On December 16, 2014, Defendants filed a motion to dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Instrument No. 17). Plaintiffs filed a response to Defendants' motion to dismiss on January 15, 2015. (Instrument No. 26).

On April 14, 2015, Plaintiffs filed a motion for partial summary judgment on their due process violation claim, alleging that Defendants imposed discipline under a policy that was not in effect on the date of the alleged misconduct. (Instrument No. 49, at 9-10). On May 1, 2015, Defendants filed a response. (Instrument No. 55). On May 6, 2015, Plaintiffs filed a reply. (Instrument No. 60).

On April 15, 2015, Defendants filed a motion for summary judgment on all claims. (Instrument No. 51). Plaintiffs filed a response on May 1, 2015. (Instrument No. 57). Defendants filed a reply on May 6, 2015. (Instrument No. 61).

**B.**

Plaintiffs Natalie Plummer and Ryan McConnell are former undergraduate students of the University of Houston. (Instrument No. 7, at 2). Plummer has completed 2-3 years of coursework at UH as of September 24, 2014, and McConnell has completed his coursework and graduated from UH. (Instruments No. 7, at 2, 22-23; No. 17, at 12). Defendant Richard Baker is UH's Assistant Vice Chancellor and Vice President of the UH Office of Equal Opportunity Services ("EOS"), and Defendant Richard Walker is the UH Vice President and Vice Chancellor for Student Affairs and Enrollment Services. (Instrument No. 7, at 3). This lawsuit stems from disciplinary sanctions imposed against Plaintiffs pursuant to UH's Sexual Misconduct Policy and as a result of events that transpired on November 19, 2011.

Plaintiffs allege that McConnell went with friends to a bar in Houston called "the Den" on the evening of November 19, 2011. (Instrument No. 7, at 11). Plaintiffs allege that McConnell met a female UH student ("female UH student") at the Den for the first time that night, and that they talked and started kissing and were both drinking heavily and intoxicated. (Instrument No. 7, at 11). Plaintiffs allege that McConnell, the female UH student, and her friend walked to McConnell's apartment complex, where McConnell and the female UH student intended to have sex. (Instrument No. 7, at 11). Plaintiffs allege that during the walk, the female UH student fell and was helped up by McConnell but suffered some minor injuries from the fall, including bruises and scrapes. (Instrument No. 7, at 11). Defendants allege that McConnell is seen on security camera footage from the lobby of his apartment complex leading the visibly intoxicated female UH student through the lobby into the elevator. (Instrument No. 51, at 12). Plaintiffs allege that once in McConnell's dorm room, McConnell and the female UH student engaged in consensual sexual activity, as evidenced by the "passion marks" and "hickeys" on McConnell's

neck. (Instrument No. 7, at 11). However, Plaintiffs concede that neither McConnell nor the female UH student can remember exactly what occurred. (Instrument No. 7, at 11). Defendants allege that once inside his apartment, McConnell made sexual contact with the female UH student while she appeared to be asleep and/or unconscious. (Instrument No. 51, at 12). Plaintiffs allege that McConnell and the female UH student both fell asleep naked on the cement floor and that the female UH student consented to lying naked with McConnell with her head and hands near his lap. (Instrument No. 7, at 11).

Plaintiffs allege that Plummer, McConnell's girlfriend (now-wife), arrived at the apartment and found McConnell and the female UH student asleep and attempted to wake them. (Instrument No. 7, at 11-12). Defendants allege that Plummer took a nude photo of McConnell and the female UH student, who was asleep and/or unconscious, and that Plummer did not verbally ask for McConnell or the female UH student's consent before doing so. (Instrument No. 51, at 12). Plaintiffs allege that Plummer videotaped the scene because she was angry that McConnell was cheating on her and wanted to use the video to confront him about his behavior later. (Instrument No. 7, at 12). Plaintiffs allege that McConnell woke up and attempted to wake the female UH student by pushing on her leg but did not attempt to engage in sexual conduct with the female UH student. (Instrument No. 7, at 12). Plaintiffs allege that the female UH student woke up and asked Plummer to have sex with her, stating "you're hot" and "I want to sex you." (Instrument No. 7, at 12). Plaintiffs allege that the female UH student followed Plummer into the hallway and continued to solicit sex from Plummer by asking Plummer to "sex her." (Instrument No. 7, at 12). Plaintiffs allege that Plummer declined and led the female UH student into the hallway and into an elevator. (Instrument No. 7, at 12). The female UH student was found naked and intoxicated in the elevator by other students, who contacted UH Police.

(Instrument No. 7, at 12). Defendants allege that the female UH student was taken to a hospital where a Sexual Assault Nurse Examiner exam was conducted and the nurse found that the female UH student had injuries consistent with a sexual assault. (Instrument No. 51, at 14).

Plummer videotaped two scenes from the night of November 19, 2011, the first depicting McConnell and the female UH student waking up on the cement floor of his dorm room ("Dorm Room Video") and the second depicting the female UH student in the hallway outside of McConnell's dorm room ("Elevator Video"). (Instrument No. 7, at 12). Plummer testified at deposition that she shared the videos with one of her friends and sent the videos to another friend electronically. (Instruments No. 51, at 14; No. 52-2, at 90-93). Plummer also testified that she shared the nude photograph she took of McConnell and the female UH student on Facebook because she wanted to expose McConnell as a cheating boyfriend. (Instruments No. 7, at 13; No. 52-2, at 99-103). Plaintiffs allege that Plummer removed the picture from Facebook a few days later. (Instrument No. 7, at 13).

Defendants allege that the Dorm Room Video showed a nude McConnell kneeling over the female UH student, who is nude, on the ground in the fetal position, and unconscious and/or asleep. (Instrument No. 51, at 13). Defendants allege that the video depicts McConnell touching, stroking, or otherwise moving his penis is a way that is consistent with masturbating and then touching the female UH student, who appears to be asleep and/or unconscious. (Instrument No. 51, at 13). Defendants allege that the video then depicts Plummer saying to McConnell, "Are you that fucked up right now Ryan?" (Instrument No. 51, at 13). Defendants allege that the video depicts McConnell covering his genitals, as Plummer begins filming the female UH student's vagina while yelling statements such as: "Oh look, she's on her fucking period, yummy" and "fucking get that pussy, bitch." (Instrument No. 51, at 13). Defendants allege that the female UH

student appears to move in the video, but never speaks or defends herself. (Instrument No. 51, at 13). Defendants allege that multiple loud slapping sounds are heard on the video as Plummer is heard yelling "Fucking yeah!," "Fucking get that pussy bitch!," and "Yeah fucking get it, get it!" (Instrument No. 51, at 13).

Defendants allege that the Elevator Video depicts the female UH student nude and lying down in the hallway of McConnell's apartment building. (Instrument No. 51, at 14). Plummer testified at deposition that she pushed the female UH student into the hallway and that the female UH student fell down. (Instruments No. 51, at 14; No. 52-2 at 65-66). Plummer also testified that she then led the nude female UH student into the elevator and sent her to the lobby of the apartment building. (Instruments No. 51 at 15; No. 52-2 at 81-82).

Defendants allege that on November 20, 2011, the female UH student made an official police report with the College Station Police Department and UH Police regarding an alleged sexual assault. (Instrument No. 7-1, at 23). On February 26, 2012, the female UH student submitted a complaint to UH, stating that she believed her Title IX rights were violated and that she was the victim of a sexual assault on November 19, 2011. (Instrument No. 7-1, at 23). Plaintiffs allege that Baker travelled to College Station, Texas, where the female UH student had gone to be home with her family after being released from Ben Taub Hospital, to encourage the female UH student to file the complaint and to obtain her complaint. (Instrument No. 7, at 14). Plaintiffs allege that UH police and the prosecutor determined that there was insufficient evidence that any criminal conduct occurred on November 19, 2011. (Instrument No. 7, at 12). Plaintiffs also allege that the investigating officer indicated that there was insufficient evidence to obtain a search warrant for McConnell's DNA because the female UH student "ha[d] no memory" of the incident. (Instrument No. 7, at 12).

On March 12, 2012, Baker sent a letter to McConnell notifying McConnell that Baker's office was reviewing an incident of alleged sexual misconduct that occurred on November 19, 2011. (Instrument No. 7-1, at 25). Baker identified McConnell as "someone who may have information pertinent to the investigation," and Plaintiffs allege that this letter unfairly failed to notify McConnell that he was the target of Baker's investigation. (Instruments No. 7, at 14; No. 7-1, at 25). In March 2012, McConnell and Plummer attended a meeting with Baker to discuss the incident, and Plummer provided Baker with a copy of the Elevator Video and the photograph she took on November 19, 2011. (Instruments No. 7, at 15; No. 17, at 10). Plaintiffs allege that Plummer no longer possessed the Dorm Room Video because she had deleted it from her phone. (Instrument No. 7, at 15).

On November 29, 2012, UH adopted the Sexual Misconduct Policy ("the Policy"), and revised such policy on August 7, 2013.[1] (Instruments No. 7, at 7; No. 7-1). The Policy states that its purpose is to "eradicate Sexual Misconduct through education, training, clear policies and serious consequences for violations. . ." (Instrument No. 7-1, at 2). The Policy defines "sexual misconduct" as a form of sex discrimination prohibited by Title XI and "provides the exclusive mechanism for handling the non-criminal investigation of any alleged Sexual Misconduct, the determination of whether this Policy was violated, and the appeal of EOS's finding as to violation/no violation of this policy." (Instruments No. 7, at 7; No. 7-1, at 3). Sexual assault under the Policy is defined as "any form of non-consensual sexual activity" and represents "a continuum of conduct from forcible rape to non-physical forms of pressure that compel individuals to engage in sexual activity against their will." (Instrument No. 7-1, at 6). The Policy identifies Defendant Baker as the Title IX Coordinator for UH, who is to "promptly inform

---

[1] There was a previous policy in place for the 2011-2012 school year. The potential punishment under each policy is identical, and there are no ex post facto concerns.

7

[UH's EOS]. . . and EOS will begin its review process in consultation with the Title IX Coordinator." (Instrument No. 7-1, at 13). The Policy provides an eleven-step process of review, including: 1) filing of the complaint, 2) consideration of interim accommodations, 3) EOS investigation, 4) response to a complaint, 5) EOS finding, 6) sanctions, 7) appeal, 8) designation of hearing panel, 9) hearing, 10) panel decision, and 11) final appeal to an appropriate administrator. (Instrument No. 7-1, at 14-19). The Policy provides that it will apply a preponderance of the evidence standard. (Instrument No. 7-1, at 15).

Defendants allege that EOS later obtained additional information and evidence, including the Dorm Room Video, from the Harris County Sheriff's Office on August 28, 2013 regarding the incidents of November 19, 2011. (Instrument No. 7-1, at 27). On September 30, 2013, Baker notified McConnell in a written letter that McConnell had been accused of:

1. sexual assault;
2. taking abusive sexual advantage of another;
3. non-consensual electronic recording and transmitting sexual images without the knowledge and consent of all parties involved; and,
4. engaging in behavior of a sexual nature that was severe and had the purpose or effect of substantially interfering with another's educational performance by creating an intimidating or hostile environment for education, on-campus living or participation in a University-affiliated activity.

(Instrument No. 7-1, at 28). Baker's letter stated that EOS would investigate the complaint against McConnell in accordance with the current Sexual Misconduct Policy and would issue a finding as to whether, by a preponderance of the evidence, McConnell's conduct on or about November 19, 2011 violated various provisions of the current Policy. (Instrument No. 7-1, at 28). Baker's September 30, 2013 letter also gave McConnell ten business days to provide a response to the allegations contained in the complaint. (Instrument No. 7-1, at 28). Although Baker's letter is addressed to McConnell, the parties agree that the letter also notified Plummer

of the same four accusations and applicable ten-day deadline to respond to the complaint. (Instruments No. 7, at 15-16; No. 17, at 11). McConnell, through his attorney, submitted a written response asserting his innocence of all charges to Baker on October 25, 2013. (Instrument No. 7-1). Plummer, through her attorney, submitted a written response to Baker on October 28, 2013, and Plummer and her attorney also met with Baker on that day to discuss the case. (Instruments No. 7, at 16; No. 17, at 11). Plaintiffs allege that Baker made several attempts to exclude Plummer's attorney from the interview, and subjected Plummer to a vigorous examination by UH employees, including an attorney, to coerce Plummer to provide information against McConnell. (Instrument No. 7, at 16-17). Plaintiffs allege that during this meeting, Baker asked Plummer about evidence that had not been previously provided to her or McConnell, despite numerous requests from their attorneys. (Instrument No. 7, at 17).

On February 17, 2014, Baker issued to Dr. Sara Jahansouz, UH-Downtown's Dean of Students, a confidential "Report of Finding," which concluded that Plaintiffs had violated UH's Sexual Misconduct Policy. (Instrument No. 17, at 11-12; No. 7, at 17-19). First, the Report states that based on the evidence, EOS determined that McConnell violated UH's Sexual Misconduct Policy "by engaging in sexual activity with [female UH student] at a time when she could not provide consent due to her incapacitation, i.e., her being under the influence of drugs (Vicodin that was not prescribed to her) and alcohol." (Instrument No. 7-1, at 39). Second, the Report states that McConnell engaged in sexual activity as defined under the Policy with the female UH student when McConnell "touched [her] ankle, thigh and buttocks (perhaps her vagina)," and that such touching constituted sexual assault because the female UH student was incapacitated at the time and did not consent to the touching. (Instrument No. 7-1, at 39). Third, the Report states that "it appears that [McConnell] was attempting to stimulate himself to sexually penetrate [the

female UH student]. . . based on [McConnell's] position/posture, and conduct/movement (masturbating to erect his penis) in the video," which constituted a violation of the Policy because "any attempt to commit intentional bodily contact of a sexual manner is considered a violation of the Policy." (Instrument No. 7-1, at 39). Fourth, the Report of Finding states that "EOS cannot find that [McConnell] committed separate violations of the sexual harassment provision of the sexual misconduct policy" because McConnell's "separate acts (failure to control his guest, participation in the disposition of [female UH student]'s personal items, and destruction of evidence" were not sexual in nature. (Instrument No. 7-1, at 40). Ultimately, the Report of Finding concludes that "it is more likely than not that [McConnell] violated the sexual assault and attempted sexual assault provisions of the Sexual Misconduct Policy when he engaged in sexual activity with another [sic] [female UH student] on November 19, 2011, without her consent." (Instrument No. 7-1, at 40). Plaintiffs object to the Report's characterization of the Dorm Room Video, and assert that the Dorm Room Video does not show McConnell touching the female UH student in a sexual manner, does not show Plummer striking the female UH student, does not show McConnell masturbating, and does not show McConnell attempting to penetrate the female UH student. (Instrument No. 7, at 18).

Pursuant to the procedural system prescribed under the Sexual Misconduct Policy, both Plaintiffs requested appeal hearings. McConnell's appeal hearing was held on March 26, 2014, and Plummer's hearing took place on April 3, 2014. (Instrument No. 7, at 19-21). Plaintiffs allege that both hearings failed to provide Plaintiffs with adequate due process. (Instrument No. 7, at 19-21). First, Plaintiffs allege that while their attorneys were present at their respective hearings, their attorneys could not actively participate during the hearing as spokespersons or vocal advocates. (Instrument No. 7, at 19-21). Second, Plaintiffs allege that the hearing board

relied on written statements and hearsay without providing either Plaintiff the opportunity for traditional cross-examination. (Instrument No. 7, at 19-21). Plaintiffs allege that they were only permitted to cross-examine adverse witnesses through the use of written questions, which were first reviewed and approved by the hearing chair. (Instrument No. 7, at 19-21). Neither Plaintiff had the ability to cross-examine the female UH student at their respective hearings because she did not attend, and neither Plaintiff had the ability to compel other students or UH employees to attend the hearing. (Instrument No. 7, at 19-21). Third, Plaintiffs allege that Baker acted as the complainant at the hearing, and relied upon evidence that was never provided to either Plaintiff, including offense reports from UH Police, the names of witnesses who provided statements to UH officials and police, video surveillance footage taken from McConnell's apartment building, and a partial transcript of Plummer's meeting with Baker on October 28, 2013. (Instrument No. 7, at 19-21). Plaintiffs also allege that no direct evidence of misconduct by either Plaintiff was presented at the hearing; no one testified that either Plaintiff "did anything wrong" or that either Plaintiff's conduct had any effect on the female UH student. (Instrument No. 7, at 19-21). Plaintiffs allege that Baker stated during the hearing that as the Title IX Administrator for UH, his interpretation of the evidence was all that mattered, that Baker attempted to convince the hearing board that Plaintiffs planned the rape of the female UH student despite the lack of evidence to support this allegation, and that Baker mischaracterized evidence to support a false theory that the female UH student was incapacitated but that McConnell was awake and alert. (Instrument No. 7, at 21). Defendants allege that the hearing panels separately determined that McConnell and Plummer were each responsible for several violations of the Policy based on a preponderance of the evidence provided. (Instrument No. 17, at 12). Defendants did not impose sanctions at the hearing panel.

On September 24, 2014, Defendant Richard Walker notified McConnell and Plummer through a written letter that he had reviewed their respective appeals and affirmed the decision of the Dean of Students that Plaintiffs had each violated the Policy. (Instruments No. 7, at 22-23, No. 17, at 12). Walker's letter indicated that he had reviewed each Plaintiff's appeal statement, letters from their respective attorneys, Mr. Riaz's sanction decision, the EOS' sanction recommendations, the UH Sexual Misconduct Policy, the appellate record, and the procedural history in each case. (Instrument No. 7-1, at 42). Walker imposed the following sanctions against both Plummer and McConnell:

> 1. Expulsion from the University of Houston.
> 2. Ban from current or future enrollment in any University of Houston System component university or learning center.
> 3. Ban from attending or being present at any off-campus activities, initiated, aided, authorized, or supervised by the University of Houston, any University of Houston system component university or by an officially-recognized organization of the University of Houston or any University of Houston component university.

(Instrument No. 7-1, at 43-46). Walker did modify the EOCs' sanction recommendation by removing any notation of the disciplinary sanctions from both Plaintiffs' UH and UH-Downtown transcripts. (Instrument No. 7-1, at 43-46). Plaintiffs allege that the three-part discipline significantly impacts McConnell because he still wishes to take courses at UH and his potential career as a Certified Public Accountant ("CPA") has been impacted because Texas requires that CPA candidates be of good moral character and this decision unfairly and falsely calls McConnell's character into doubt. (Instrument No. 7, at 22). Plaintiffs similarly allege that the discipline significantly impacts Plummer, who wishes to continue her academic career at UH and will face significantly more difficulties in attempting to transfer to another school as a result of the sanctions. (Instrument No. 7, at 23).

Filed on October 17, 2014, Plaintiffs' Second Amended Complaint alleges that Defendants violated Plaintiffs' constitutional due process rights under 42 U.S.C.A. § 1983 and the Fourteenth Amendment, and Title IX of the Educational Amendments of 1972, 86 Stat. 373, as amended, 20 U.S.C.A. § 1681. (Instrument No. 7). In Plaintiffs' first action, they allege that UH's Sexual Misconduct Policy and the individual Defendants' application and enforcement of the Policy violated Plaintiffs' constitutional right to a full, fair, and impartial investigation and a fundamentally fair and reliable hearing process. (Instrument No. 7, at 23-25). Second, Plaintiffs allege that Defendants acted intentionally and with callous disregard for Plaintiffs' constitutional rights and are liable for Plaintiffs' diminished earning capacities, lost career and business opportunities, litigation expenses including attorney's fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, and other compensatory damages under 42 U.S.C.A. § 1983. (Instrument No. 7, at 26). Third, Plaintiffs allege that Defendants committed impermissible gender bias against Plaintiffs in the investigation and adjudication of the November 19, 2011 incidents in violation of Title IX, and seek a declaratory judgment that the UH Sexual Misconduct Policy violates Title IX. (Instrument No. 7, at 26-28). Fourth, Plaintiffs allege that Defendants' Title IX and constitutional violations directly and proximately caused Plaintiffs to suffer severe and substantial damages, for which Defendants are liable. (Instrument No. 7, at 28-29). Lastly, Plaintiffs request injunctive relief to be restored as students at UH and for this Court to prohibit any other actions against anyone under the UH Sexual Misconduct Policy. (Instrument No. 7, at 29).

In a motion filed on December 16, 2014, Defendants urge the Court to dismiss Plaintiff's lawsuit on three grounds. (Instrument No. 17). First, Defendants assert that Plaintiffs' due process claims fail because Plaintiffs have not identified a clearly protected property or liberty

interest, and also because Plaintiffs received all the process they were due under the law. (Instrument No. 17, at 13). Second, Defendants assert that Plaintiffs' Title IX claims against UH are fatally flawed because Plaintiff has failed to raise an inference of gender bias and because the accused students are both female and male and received identical due process and identical sanctions. (Instrument No. 7, at 13). Third, Defendants assert that Plaintiff has failed to plead viable Section 1983 claims because Walker and Baker are entitled to qualified immunity, and UH is not a "person" under Section 1983 in the Fifth Circuit and is additionally immune under the Eleventh Amendment. (Instrument No. 17, at 16).

In a motion filed on April 15, 2015, Plaintiffs urge the Court to award partial summary judgment on their due process claim, on the grounds that UH imposed discipline against Plaintiffs under a policy that was not in effect on the date of the alleged misconduct. (Instrument No. 49, 9). In a response filed on May 1, 2015, Defendants oppose the motion on the grounds that Plaintiffs had fair notice that their conduct was prohibited under all current and past iterations of the Policy, and because Plaintiffs cannot show that they were substantially prejudiced by the application of the 2013 Policy. (Instrument No. 55).

In a motion filed on April 15, 2015, Defendants urge the Court to award summary judgment in favor of Defendants on all claims, on the grounds that there is insufficient evidence in the record to support their procedural due process claim, their Title IX claim of gender discrimination, and their Section 1983 claim based on the failed due process claims and because Defendants Walker and Baker are entitled to qualified immunity. (Instrument No. 51). In a response filed on May 1, 2015, Plaintiffs oppose summary judgment on the grounds that there is a material issue of fact as to whether UH violated Plaintiffs' due process rights, and that Walker and Baker are not entitled to qualified immunity. (Instrument No. 57).

## II.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, a complaint that articulates "naked assertions devoid of further factual enhancement" is similarly insufficient to satisfy the pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 678 (internal punctuation omitted).

When a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must articulate "the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Stated otherwise, in order to withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010). A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

*Iqbal*, 556 U.S. at 678. This "plausibility standard is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Twombly*, 550 U.S. at 557.

Under this rubric, dismissal is proper only if the plaintiff's complaint: (1) does not include a cognizable legal theory, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), or (2) includes a cognizable legal theory but fails to plead enough facts to state a claim to relief that is plausible on its face, *Pleasant*, 663 F.3d at 775; *see also Frith v. Guardian Life Ins. Co*., 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) (Gilmore, J.) (holding that dismissal pursuant to Rule 12(b)(6) "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory").

When ruling on a 12(b)(6) motion, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[2] *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court does not resolve any disputed fact issues. *Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633 (1999). Instead, the Court assumes all well-pleaded facts contained in the complaint are true. *Wolcott*, 635 F.3d at 763. The Court will not, however "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). Similarly, legal conclusions masquerading as factual conclusions need not be treated as true. *Blackburn v.*

---

[2] Matters of which a court may take judicial notice include, for example, matters of public record. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

*City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *see also Iqbal*, 556 U.S. at 678. Although all well-pleaded facts are viewed in the light most favorable to the plaintiff, *Turner*, 663 F.3d at 775; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), the Court "will not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal citations and quotations omitted). Therefore, "to avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts." *Dorsey*, 540 F.3d at 338.

That said, "motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). Given the harshness of dismissal, the Court will generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given.") (internal citations omitted).

## III.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25(1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise

manner in which that evidence supports his or her claim," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (*quoting Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am's Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

In deciding a summary judgment motion, the District Court does not make credibility determinations or weigh evidence. *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009).  Nor does the court "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Ragas,* 136 F.3d at 458; *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988) (it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"). Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## IV.

## A.

The Court first reviews Plaintiffs' claim that the UH Sexual Misconduct Policy violated Plaintiffs' procedural due process protections.

Plaintiffs assert that Defendants are liable for damages due to their intentional violation of Plaintiffs' civil rights under 42 U.S.C.A. § 1983. (Instrument No. 7). In moving to dismiss, and alternatively for summary judgment, Defendants assert that Plaintiffs' Section 1983 claim against UH should be dismissed on the grounds of sovereign immunity, and that Baker and Walker are entitled to qualified immunity from Plaintiffs' Section 1983 claims. (Instrument No. 17).

## 1.

First, the Court reviews Plaintiffs' Section 1983 claim against Defendant UH. Section 1983 provides a private right of action for damages to individuals who are deprived of "any rights, privileges, or immunities" protected by the Constitution or federal law by any "person" acting under the color of state law. *Stotter v. Univ. of Tex. At San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (citing 42 U.S.C.A. § 1983). A Section 1983 plaintiff claiming a constitutional violation by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice. U.S. Const. Amend. XIV; 42 U.S.C.A. § 1983. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009). Under Section 1983, a municipality or local government entity may be held liable when (1) the enforcement of a municipal policy or custom was (2) the moving force of the violation of federally protected rights. 42 U.S.C.A. § 1983 (West); *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211 (5th Cir. 1998).

In this case, Plaintiffs allege that Defendants acted intentionally and with callous disregard for Plaintiffs' clearly established constitutional due process rights. (Instrument No. 7, at 26). Plaintiffs assert that Defendants' enforcement of the UH Sexual Misconduct Policy caused Plaintiffs' injuries, and that such enforcement was the moving force of a constitutional due process violation against Plaintiffs. *See* 42 U.S.C.A. § 1983 (West); *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211. However, the Supreme Court has held that "neither [a] state nor its officials acting in their official capacities are "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Section 1983 does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties, as the Eleventh Amendment bars such suits unless the state has waived its immunity or Congress has overridden that immunity. *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472-73 (1987). The Court concluded that Congress, in passing § 1983, had no intention of disturbing the states' Eleventh Amendment immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66.

In this case, Plaintiffs seek money damages, including "diminished earning capacity, lost career and business opportunities, litigation expenses including attorney's fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages" pursuant to their Section 1983 claim against all Defendants. (Instrument No. 7, at 26). However, Plaintiffs have neither factually alleged nor provided evidence of defendant UH's waiver of immunity to suits brought under Section 1983. In moving to dismiss and, alternatively, for summary judgment, Defendants assert that both UH and the individual Defendants have Eleventh Amendment immunity against these claims. (Instrument No. 51, at 18-19). Therefore, Fifth Circuit precedent on state sovereign immunity

supports a finding that Defendant UH is shielded under Eleventh Amendment immunity from Plaintiffs' Section 1983 claims. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58; *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468; *Stotter v. Univ. of Tex. At San Antonio*, 508 F.3d 812.

Therefore, the Court finds no cognizable legal theory to apply Section 1983 liability against Defendant UH and that no issues of material fact remain as to Plaintiffs' Section 1983 claim against UH. Accordingly, moving Defendants' motion for summary judgment on Plaintiff's Section 1983 claims against Defendant UH is GRANTED (Instrument No. 51). Defendants' motion to dismiss Plaintiffs' Section 1983 claims is DENIED as moot. (Instrument No. 17).


## 2.

Second, the Court reviews Plaintiffs' Section 1983 claim against individual defendants Baker and Walker. Plaintiffs assert that Defendants Walker and Baker are individually liable under Section 1983 because they acted intentionally and with callous disregard for Plaintiffs' clearly established constitutional rights. (Instrument No. 7, at 26). Defendants urge the Court to dismiss Plaintiff's Section 1983 liability against individual Defendants on the theory of qualified immunity. (Instrument No. 17). In response, Plaintiffs assert that they brought suit for Section 1983 liability against Baker and Walker in their individual capacities rather than their official capacities. (Instrument No. 26, at 8). In an effort to defeat Defendants' qualified immunity defense, Plaintiffs attempt in their reply to amend their complaint to assert only declaratory and injunctive relief against Baker and Walker rather than money damages. (Instrument No. 57, at 28). In the alternative, Plaintiffs urge the Court to defer ruling on the issue of qualified immunity

until Defendants have supplied the requested hearing transcript to present more evidence to the Court.  (Instrument No. 26, at 18).

In Section 1983 actions, plaintiffs "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Qualified immunity is an affirmative defense that shields government officials from liability "when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370-31 (5th Cir. 2011). The defense is available to government officials who perform discretionary functions "insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity shields government officials from money damages, not suits for injunctive or declaratory relief. *Davis v. Lensing*, 139 F.3d 899 (5th Cir. 1998) (citing *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991). The Fifth Circuit has also held that "neither sovereign nor qualified immunity prevent [a plaintiff] from pursuing declaratory and injunctive relief against. . .state officials." *Mayfield v. Texas Dep't Of Criminal Justice*, 529 F.3d 599, 606 (5th Cir. 2008). In this case, Plaintiffs' Section 1983 claim seeks money damages and attorney's fees from unspecified defendants. (Instrument No. 7, at 26). From their Second Amended Complaint, Plaintiffs appear to levy demands for monetary damages as well as injunctive and declaratory relief against all Defendants. (Instrument No. 7). As such, the Court finds that individual Defendants Baker and Walker may claim qualified immunity in defense against Plaintiffs' Section 1983 claims for injunctive and declaratory relief. *See Davis v. Lensing*, 139 F.3d 899; *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844.

The Court next reviews Defendants' qualified immunity defense against Plaintiffs' Section 1983 due process claims. Although qualified immunity is an affirmative defense, the plaintiff bears the burden of negating qualified immunity once it has been properly raised by the defendant. *See Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). Courts apply a two-prong test to determine whether a plaintiff has met this burden: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right at issue was "clearly established" at the time of the misconduct, rendering the conduct objectively unreasonable. *Saucier v. Katz*, 533 U.S. 193, 201 (2001). A right is deemed to be clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Werneck v. Garcia*, 591 F.2d 386, 392 (5th Cir. 2009). The Fifth Circuit has clarified that the plaintiff must "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2001). In this case, to meet this burden, Plaintiffs must show that Baker and Walker committed an unreasonable violation of a clearly established constitutional right, or demonstrate that there is an issue of material fact for jury determination on this issue. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Plaintiffs cannot rest on conclusory allegations and assertions, but rather must demonstrate genuine issues of material fact regarding the reasonableness of Defendants' official conduct. *Id.*

In this case, Plaintiffs allege that Baker and Walker have acted intentionally and with callous disregard to Plaintiffs' clearly established constitutional due process rights. (Instrument No. 7, at 26). In their motion to dismiss, Defendants assert that Plaintiffs have not identified a clearly protected property or liberty interest in their 1) education at their chosen university, 2)

academic and professional reputation, or 3) ability to enroll at other institutions of higher education and to pursue their chosen careers. (Instrument No. 17, at 19-21). As such, Defendants urge this Court to dismiss Plaintiffs' due process claims. As an alternative theory, Defendants assert that Plaintiffs, as university students, were not entitled to the full constitutional and evidentiary scrutiny normally afforded to criminal defendants because Plaintiffs were investigated as part of a university disciplinary proceeding, and received all the process they were due under the law. (Instrument No. 17, at 19-25).

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The basis of a procedural due process claim is that the government, before depriving the plaintiff of a recognized property or liberty interest, failed to afford the plaintiff required procedures for challenging the government's action. *Wheeler v. Miller*, 168 F.3d 241, 249 (5th Cir. 1999). "To be entitled to the procedural protections of the Fourteenth Amendment, [plaintiffs] must ... demonstrate that her dismissal from the school deprived her of either a 'liberty' or a 'property' interest." *Bd. of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 82 (1978). Accordingly, this Court's review of Plaintiffs' due process claim requires a two-part analysis: (1) whether Plaintiffs have a liberty or property interest that is entitled to procedural due process protection; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972).

Neither the Supreme Court nor the Fifth Circuit has concluded whether students have a liberty or property interest in public higher education. *See Smith v. Davis*, 507 Fed. Appx. 359, 362 (5th Cir. 2013) (per curiam) ("The [Supreme] Court has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process

protections. Accordingly, our court has followed suit."). Additionally, the Fifth Circuit has established that there is "no support for the proposition that reputation alone, apart from some more tangible interests ... is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Wheeler*, 168 F.3d at 249 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). For the purposes of the Court's analysis herein, the Court assumes, without deciding, as the Fifth Circuit did in *Perez v. Texas A & M Univ. at Corpus Christi*, that Plaintiffs had protected property and liberty interests and look to what procedural protections they were due. *See* 589 F. App'x 244, 248-50 (5th Cir. 2014).

Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances. *Mathews*, 424 U.S. at 334; *Goss*, 419 U.S. at 578. This flexible standard includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335.

In student disciplinary actions, due process requires that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. *Goss v. Lopez*, 419 U.S. 565, 581 (1975); *see also Dixon v. Alabama State Bd. of Ed.*, 294 F.2d 150, 157 (5th Cir. 1961), *cert. denied*, 368 U.S. 930 (1961) ("[d]ue process requires notice and some opportunity for

hearing before a student at a tax-supported college can be expelled for misconduct"). The class action appellants in *Goss* were Ohio public high school students who had been suspended from school for misconduct for up to 10 days without a hearing. *Goss v. Lopez*, 419 U.S. at 565. The court granted the requested injunction, holding that high school students facing temporary suspension from a public school have property and liberty interests that qualify for protection under the Due Process Clause of the Fourteenth Amendment. *Id.* at 565. However, *Goss* required nothing more than an "informal give-and-take" between the student and the administrative body dismissing him that would give the student the opportunity to characterize his conduct and put it in what he deems the proper context. *Id.* at 583-84; *see also Wheeler v. Miller*, 168 F.3d at 247-49  ("At a minimum, when university officials seek to sanction a student for misconduct, due course of law guarantee requires oral or written notice of the charges against the student and, if the student denies them, an explanation of the evidence the authorities have and an opportunity to present his or her side of the story"). However, the court has not specified what process must be afforded for all disciplinary dismissals from state-supported universities. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961); *Bexar County Sheriff's Civil Service Comm'n v. Davis*, 802 S.W.2d 659, 661-62 (Tex. 1990), *cert. denied*, 502 U.S. 811 (1991). The court also cautioned that a university is an "academic institution, not a courtroom or administrative hearing room,' and thus should not be weighted down with formalized procedural requirements imposed by actors estranged from the academic environment." *Davis v. Mann*, 882 F.2d 967, 974 (5th Cir. 1989).

In this case, Plaintiffs assert that their due process rights were violated because: (1) Defendants punished Plaintiffs under a policy that was not in effect at the time of the alleged

misconduct, (2) Defendants failed to undertake a full, fair, and impartial investigation, and (3) Defendants allowed hearsay evidence to be used at the respective hearings without providing either Plaintiff the ability to orally cross-examine witnesses. (Instruments No. 17, at 18-23; No. 26, at 12-16). As to the first assertion, Plaintiffs assert that "significant and unfair departures from an institution's own procedures can amount to a violation of due process." (Instrument No. 26, at 13) (quoting *Furey v. Temple Univ.*, 730 F. Supp. 2d 380 (E.D. Pa 2010). As to their ex post facto claim, Plaintiffs assert that Defendants violated due process by applying the UH Sexual Misconduct Policy, which was first drafted in 2012 and officially adopted on August 7, 2013, against Plaintiffs for an incident occurring on November 19, 2011. (Instruments No. 26, at 13; No. 49, at 9-11); *see Burgess v. Salmon*, 97 U.S. 381, 384 (1878) ("[a]n *ex post facto* law is one which imposes a punishment for an act which was not punishable at the time it was committed, or a punishment in addition to that then prescribed"). Plaintiffs do not dispute that UH's interim Sexual Harassment Policy and Sexual Assault Policy were in effect on November 19, 2011 through November 28, 2012. (Instrument No. 55, at 5). Plaintiffs allege that they had no notice that their alleged conduct was barred by the university; however, the evidence clearly demonstrates that Plaintiff's conduct was prohibited under all current and past iterations of UH policies, including the interim policies in effect on November 19, 2011. (Instrument No. 55, at 5). UH's interim policy effective during school year 2011-2012 explicitly states that "[p]roven failure to meet [the] obligation [of the policy] will justify appropriate disciplinary actions including, but not limited to, expulsion, suspension, disciplinary probation, or reprimand." (Instrument No. 60-2, at 5). Additionally, UH's interim policy which was in effect in November 2011 explicitly provides for available sanctions after the investigation and hearing process, including

"**9.1 Expulsion** prohibits the student from ever attending the University and from

being present without permission on university property."

(Instrument No. 60-2, at 8). Accordingly, the Court finds as a matter of law that Plaintiffs were

on clear notice that the conduct for which they were sanctioned was prohibited by UH and that

the application of the later 2012 Policy as opposed to the interim policy did not create an ex post

facto problem.

Plaintiffs also assert that Defendants and UH's Sexual Misconduct Policy violated due

process based on evidentiary inadequacies in its investigative process. However, the Fifth Circuit

has held that disciplinary proceedings do not require formal rules of evidence or all the

procedural protections of a trial. *See Esfeller v. O'Keef*, 391 F. App'x 337 (5th Cir. 2010)

(holding that a state university which held a hearing in a student's absence and barred his

attorney from observing or participating in the hearing was nevertheless compliant with

procedural due process because the student was otherwise heard on a number of occasions by

different university officials); *Tasby v. Estes*, 643 F.2d 1103, 1106 (5th Cir. 1981) (quoting

*Boykins v. Fairfield Bd. of Ed.*, 492 F.2d 697, 701 (5th Cir. 1974) ("rights in a student

disciplinary hearing may properly be determined upon the hearsay evidence of school

administrators who investigate disciplinary infractions")). In *Wheeler*, the Fifth Circuit discussed

procedural due process rights as variable and dependent on the competing interests of the student

and the university. *Wheeler v. Miller*, 168 F.3d 241, 249 (5th Cir. 1999). The Court recognized

that "[a]lthough university officials presumably act in good faith [in] bringing charges of

academic dishonesty against a student, there is a significant risk of error because the controlling

facts are in dispute and university officials often must rely on circumstantial evidence and reports

of others." *Id.* at 247-49 (quoting *Goss*, 419 U.S. at 580).

Applying this precedent, the Court finds that UH, pursuant to its own rules and regulations, afforded Plaintiffs a level of due process adequate under Fifth Circuit case law. Plaintiffs have failed to demonstrate that they were entitled to any more due process than they have already received. Both Plaintiffs were given oral and written notice of the charges against them, their rights and obligations under the Sexual Misconduct Policy, and written notice of when their respective hearings would take place. (Instrument No. 7, at 18-23). Plaintiffs do not dispute that at their respective hearings, they participated with their attorneys present, and had the opportunity to provide opening and closing statements, present their sides of the story, introduce evidence, call their own witnesses, and view and respond to the videos and other evidence used in the course of investigation. (Instrument No. 17, at 22-23). While neither Plummer's meeting with Baker nor each Plaintiff's respective appeal hearings was a formal, trial-type hearing, both Plummer and McConnell were able to fully discuss the charges against them and present evidence supporting their contentions. That is all the Due Process Clause requires in this situation, and this Court finds that Plaintiffs were afforded the due process to which they were entitled. *See Parker v. Duffey*, 251 F. App'x 879, 882-83 (5th Cir. 2007) (holding that defendant Texas State University had satisfied its due process obligations to plaintiffs, graduate students, when it gave them notice of the allegations against them, ample opportunity to be heard including multiple meetings with administrators, and the opportunity to fully discuss the charges against them and present evidence supporting their contentions). Additionally, Plaintiffs were allowed to appeal Baker's decision to another UH administrator. Even accepting Plaintiffs' allegations as true and viewing those allegations in the light most favorable to them, *see Stokes*, 498 F.3d at 484, it is nevertheless evident that Defendant UH provided Plaintiffs with adequate notice and process. This Court, assuming that Plaintiffs had a

property or liberty interest subject to procedural due process protection, finds that Defendants have met all constitutional due process requirements.

Therefore, this Court next examines Defendants' defense of qualified immunity. Qualified immunity negates Plaintiffs' Section 1983 claim because Baker and Walker's actions could reasonably have been believed to be legal, and their discretionary conduct in enforcing the UH Policy did not violate clearly established rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Morgan v. Swanson*, 659 F.3d 359, 370-31 (5th Cir. 2011). Additionally, Plaintiffs have failed to show that Baker and Walker committed an unreasonable violation of Plaintiffs' clearly established constitutional rights, and there is no remaining issue of material fact for jury consideration. *See Michalik v. Hermann*, 422 F.3d 252, 262. As such, Defendants Baker and Walker are entitled to summary judgment on Plaintiffs' Section 1983 claims on the basis of qualified immunity. *See Michalik*, 422 F.3d at 262; *Saucier*, 533 U.S. at 201.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' Section 1983 claim is GRANTED on the basis of qualified immunity. (Instrument No. 51). Defendants' motion to dismiss Plaintiffs' Section 1983 claim is DENIED as moot. (Instrument No. 17).

**B.**

Next, the Court reviews Plaintiffs' claims under Title IX and allegations that Defendants committed impermissible gender bias in applying the UH Sexual Misconduct Policy against Plaintiffs. Specifically, Plaintiffs assert that Defendants and the UH Policy created a general atmosphere of gender bias at UH where female complainants of sex assault were treated as "survivors," and that the circumstances of Defendants' investigation and hearing process cast doubt onto the accuracy of the outcome. (Instrument No. 7, at 18-23, 26-29). Plaintiffs allege that

the gender of the victim in this case was the motivating factor in UH's decision to impose discipline, and that discipline was imposed only against McConnell even though both the male McConnell and the female UH student engaged in the same conduct. (Instrument No. 7, at 26-29).

Defendants urge this court to dismiss Plaintiff's Title IX claims because individual Defendants Baker and Walker cannot be liable under Title IX, and because the Second Amended Complaint failed to allege sufficient facts to support a viable Title IX claim for gender bias. (Instrument No. 17, at 29-33). In the alternative, Defendants move for summary judgment on Plaintiffs' Title IX claims on the grounds that Plaintiffs' claims fail under both the erroneous outcome standard and the deliberate indifference standard. (Instrument No. 51, at 31-35).

Section 1681(a) provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681 (West). Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination, *Cannon v. University of Chicago*, 441 U.S. 677, 690-93 (1946), and the Supreme Court has held that that right includes actions for monetary damages by private persons, *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), and encompasses intentional sex discrimination in the form of a recipient's deliberate indifference to sexual harassment of a student by a teacher, *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290-91 (1989), or by another student, *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 642 (1999). The Supreme Court has also held that a recipient of federal education funding violates Title IX if it acts with "deliberate indifference" to discrimination against or harassment of a student on the basis of sex. *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 167 (2005); 20 U.S.C.A. § 1681

(West). The Court also held "discrimination" to be a term covering "a wide range of intentional unequal treatment" on the basis of sex, and by which Congress gave the statute a broad reach. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. at 167; 20 U.S.C.A. § 1681 (West). Title IX reaches institutions and programs in receipt of federal funds, which may include nonpublic institutions, but it does not authorize suits against school officials, teachers, and other individuals. 20 U.S.C.A. § 1681(a, c) (West); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009); *see also Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Ed.*, 526 U.S. 629 (1999) (the government's enforcement power under Title IX may only be exercised against the funding recipient, and damages liability under Title IX is not extended to parties outside the scope of this power).

In this case, Defendants move to dismiss Plaintiffs' Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. (Instrument No. 17). Given the limited scope of Title IX liability, this Court GRANTS Defendants' motion as to the individual defendants. (Instrument No. 17). *See Davis Next Friend LaShonda D. V. Monroe Cnty. Bd. Of Ed.*, 526 U.S. at 636 ("only federally funded educational institutions are subject to liability in private causes of action under Title IX"); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).

As the only remaining defendant to Plaintiffs' Title IX claim, UH claims that Plaintiffs have failed to state a cognizable legal theory of gender bias under the UH Policy. (Instruments No. 17, at 30; No. 51, at 31-34). Plaintiffs allege that UH committed gender bias in its selective and overly aggressive enforcement of the Policy against Plaintiffs and its decision to not pursue any disciplinary actions against the female UH student. (Instrument No. 7, at 26-29). Plaintiffs assert Title IX claims under the erroneous outcome and deliberate indifference theories of

liability. (Instrument No. 57, at 30). Both parties cite to *Yusuf v. Vassar Coll.*, in which the Second Circuit determined that a plaintiff alleging gender discrimination by a university must do more than recite conclusory assertions but rather must specifically allege events to constitute intentional discrimination as well as circumstances that give rise to a plausible inference of discriminatory intent. 35 F.3d 709 (2d Cir. 1994). Additionally, a student alleging an erroneous outcome of a university disciplinary proceeding on grounds of gender bias "must allege particular facts sufficient to cast some articulable doubt on [the] accuracy of [the] outcome of [the] disciplinary proceeding." *Id.*; 20 U.S.C.A. § 1681(a) (West). Plaintiffs each allege that the respective outcomes of their disciplinary proceedings were erroneous based on Baker's alleged mischaracterization of the evidence and the pro-female-complainant atmosphere created under the UH Policy. (Instrument No. 7, at 26-29). However, there is no binding precedent applying the erroneous outcome standard in Title IX cases in the current jurisdiction.

In this case, the undisputed facts are that Plummer and McConnell received identical process in UH's investigations and identical disciplinary sanctions under the Policy. (Instruments No. 7, at 14-23; No. 17, at 32). In order to prevail against a school under Title IX, plaintiffs must demonstrate that an official, who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the district's behalf, had actual knowledge of discrimination and failed to adequately respond. *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211 (5th Cir. 1998); 20 U.S.C.A. § 1681 (West). Damages are not appropriate under Title IX unless an official with authority to address the alleged discrimination and institute corrective measures has actual knowledge of the discrimination and failed to respond adequately. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998); 20 U.S.C.A. § 1681 (West). Under the deliberate indifference theory of liability, a Title IX plaintiff can establish liability by

showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference. 20 U.S.C.A. § 1681(a) (West); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009). In this case, Plaintiffs allege that UH committed gender bias in its enforcement of the Sexual Misconduct Policy because only the male McConnell was punished for an incident in which the female UH student also participated. (Instrument No. 7, at 27). However, Plaintiffs do not dispute that Defendants made the determination based on all evidence available in this case, including video evidence of McConnell rubbing the nude female UH student while she is either asleep or unconscious on the floor of his dorm room. Even after accepting all of Plaintiffs' factual allegations as true, this Court cannot find that Plaintiff McConnell and the female UH student were similarly situated under the circumstances. Plaintiffs allege that "Plummer would not have been subject to any discipline except for her role with male McConnell," but fail to allege relevant facts or provide any evidence to support this theory. (Instrument No. 7, at 27).  Additionally, Plaintiffs do not allege any wrongdoing by the female UH student, and Plummer declined to press charges or file a Title IX complaint against the female UH student despite claiming that the female UH student had assaulted her. (Instrument No. 51, at 35). Ultimately, Plaintiffs have alleged no facts and presented no evidence to support that UH made its respective determinations in Plummer's or McConnell's case based on anything other than Defendants' assessment of the relevant evidence. As the only similarly situated persons under investigation, the male McConnell and the female Plummer received equal treatment in the proceedings. As such, Plaintiffs have not presented a cognizable legal theory on its Title IX claims. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

Therefore, the Court finds that Plaintiffs have failed to state a cognizable legal theory of gender bias under UH's enforcement of the Sexual Misconduct Policy. Accordingly, Defendants' motion to dismiss Plaintiffs' Title IX claims is GRANTED (Instrument No. 17).

### V.

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' due process and Title IX claims. **(Instrument No. 17)**. Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiffs' Section 1983 claims. **(Instrument No. 51)**. Plaintiffs' Motion for Partial Summary Judgment is **DENIED as moot. (Instrument No. 49)**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 28th day of May, 2015, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**